ROSEN & ASSOCIATES, P.C.
Proposed Attorneys for the Debtor
 and Debtor in Possession
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Nancy L. Kourland

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
In re                                                                         Chapter 11

Pretty Girl, Inc.,                                                       Case No. 14-11979 (SHL)

                                     Debtor.
-----------------------------------------------------------x

**MOTION OF THE DEBTOR AND DEBTOR IN POSSESSION
FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE
USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE
PROTECTION, AND (III) SCHEDULING A FINAL HEARING ON THE MOTION**

TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE,

   Pretty Girl, Inc., the above-captioned debtor and debtor in possession (the

"**Debtor**"), by its proposed attorneys, Rosen & Associates, P.C., respectfully represents:

**PRELIMINARY STATEMENT**

   1.  By this Motion (the "**Motion**"), the Debtor seeks, pursuant to sections 361

and 363 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules

2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"),

Rules 4001-2 and 9013-1 of the Local Rules for the United States Bankruptcy Court for the

Southern District of New York (the "**Local Rules**"), and the Guidelines for Financing Motions

as set forth in General Order No. 274 of the United States Bankruptcy Court for the Southern

District of New York (the "**Financing Guidelines**"), (a) the entry of an interim order ("**Interim**

Order"), substantially in the form attached hereto as Exhibit "A," (i) authorizing its use of "cash collateral" (as defined under section 363 of the Bankruptcy Code) in which JP Morgan Chase Bank, NA (the "**Bank**") has an interest, (ii) granting the Bank adequate protection on account of such use, (iii) scheduling a final hearing on the Motion (the "**Final Hearing**"), (b) the entry of a final order (the "**Final Order**") after the Final Hearing, and (c) such other and further relief as to this Court seems just and proper.

## JURISDICTION

2.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this case is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3.  On July 2, 2014 (the "**Petition Date**"), the Debtor commenced in this Court a voluntary case under chapter 11 of the Bankruptcy Code.

4.  The Debtor is operating its business and managing its property as a debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. To date, no trustee, examiner or creditors' committee has been appointed.

## THE DEBTOR'S BUSINESS

1.  The Debtor is a corporation organized under the laws of the state of New York. It maintains its offices at 1407 Broadway, New York, NY, 10018. The Debtor has elected under the Internal Revenue Code to be treated as an S corporation. Accordingly, the Debtor is not a tax paying entity; rather, Albert Nigri, the Debtor's sole shareholder, is taxed on the Debtor's taxable income.

2.  The Debtor, which was founded in 1985, manages twenty-seven (27) individually incorporated and operated retail stores (the "**Stores**") that sell fashionable junior,

2

missy, and plus-size clothing, accessories, and footwear to price-conscious women. Twenty-five (25) of the Stores are located in New York and New Jersey and one is located in each of Chicago, IL and Philadelphia, PA. Mr. Nigri also is the sole shareholder of each of the Stores.

3. The Debtor, in addition to providing administrative and management services to each of the Stores, purchases inventory for its own account from a non-debtor affiliate as a wholesale distributor and each of the Stores purchase its inventory from the Debtor exclusively. Accordingly, the Debtor's principal assets consist of its inventory and accounts receivable generated from its sale of inventory to the Stores.

4. For the year ended June 30, 2014, the Debtor had net sales of approximately $17.1 million and generated a loss from operations of approximately $4.33 million. As of June 30, 2014, its books and records reflect assets totaling approximately $10.76 million and liabilities totaling approximately $12.27 million. As of June 30, 2014, the Debtor's unsecured trade debt aggregated approximately $4.22 million.

5. The Debtor's business has suffered as a result of the weak economic recovery from the recession, which has particularly affected the buying habits of the Stores' cost-conscious customers. Because the Debtor's losses have impaired its ability to satisfy timely its obligations to vendors, a financial restructuring is essential.

6. In addition, a judgment was entered against the Debtor on June 13, 2014 by the United States District Court for the Eastern District of New York in the amount of $3,365,000.00. The judgment arose from an action by an employee of one of the Stores which sought damages based upon claims of a "hostile work environment," assault and battery, and negligence.

7. The Debtor commenced its chapter 11 case to afford it a centralized forum for the restructuring of its various obligations. It also did so in order to avoid possible

precipitous action by the judgment creditor, among others, which could have resulted in an *ad hoc* piecemeal exercise of remedies that would have jeopardized the Debtor's enterprise value.

5. The Debtor believes chapter 11 will afford it the opportunity to propose, confirm, and consummate a plan of reorganization that will be in the best interests of its estate and all of its creditors and ensure the Debtor's health and growth for years to come.

### THE DEBTOR'S PRE-PETITION AGREEMENTS WITH THE BANK

6. On January 28, 2011, the Debtor and the Bank entered into a loan agreement (the "**Loan Agreement**"), a copy of which is attached hereto as Exhibit "B," in which the Bank made available to the Debtor a revolving loan (the "**Loan**") with a credit limit of $3 million and a variable interest rate of 2.490 percentage points over the LIBOR Rate. The Loan is evidenced by a promissory note in the original amount of $3 million. Effective April 17, 2014, the Bank converted $1 million of the Revolving Loan to a fixed line of credit. As of the Petition Date, a balance of approximately $2.75 million was due under the Loan Agreement.

**The Pre-Petition Date Collateral**

7. To secure the Debtor's obligation under the Loan Agreement, the Debtor granted to the Bank and the Bank has and holds a duly perfected first priority security interest in and lien upon substantially all the Debtor's personal property of every kind and nature whether now owned or hereafter acquired, wherever located, including, without limitation, real property, rents, all accounts, inventory, equipment, and general intangibles plus all accessions, additions, replacements, and substitutions relating to any of the foregoing, all records of any kind relating to any of the foregoing, and all proceeds relating to any of the foregoing (including insurance proceeds) (collectively, the "**Pre-Petition Collateral**"), with priority over all other liens except for any liens otherwise permitted by the Loan Agreement.

4

8. The Debtor's obligations under the Loan Agreement are further secured by a security interest in substantially all of the property of each of the Stores, as defined in the Motion, including inventory, chattel paper, accounts, equipment, general intangibles, accessions, attachments, accessories, tools, parts, supplies, replacements and additions, instruments, rents, monies, payments, all rights arising out of sale, lease or any disposition thereof, and all proceeds thereof.

9. The Debtor's obligations under the Loan Agreement also are individually guaranteed by each of the Stores, PGNY, Inc., a non-debtor affiliate wholly owned by Albert Nigri, and Mr. Nigri personally.

## NEED FOR USE OF CASH COLLATERAL

10. The Debtor requires the use of cash collateral in which the Bank has an interest for such purposes set forth in the Interim Budget, attached hereto as Exhibit "C," and to carry out its daily business operations; it has no alternative source of revenue to draw upon. The Debtor's ability to access its accounts receivable, purchase inventory, pay rent and office expenses, maintain business relationships with vendors, suppliers, and customers, pay payroll and other direct operating expenses, and otherwise finance operations is essential to the Debtor's continued viability.

11. Consequently, the Debtor has an immediate need to use such cash collateral to avoid irreparable harm. If the Debtor is unable to spend proceeds of Pre-Petition Collateral, the Debtor will not be able to continue the operation of its business. The preservation, maintenance, and enhancement of the going concern value of the Debtor are of the utmost significance and importance to a successful reorganization of the Debtor under chapter 11 of the Bankruptcy Code.

## ADEQUACY OF THE INTERIM BUDGET

12. The Debtor has prepared the Interim Budget, which it believes is adequate to maintain business operations and pay all administrative expenses due and payable during the period between the entry of this Interim Order and the entry of a Final Order. The Debtor estimates this time period will be approximately 14 days. In accordance with the Interim Budget, the Debtor seeks to use approximately $1.1 million which represents the Debtor's projected revenue and income for this interim time period.

## CONCISE STATEMENT OF THE
## MATERIAL TERMS OF THE ORDER

13. In accordance with Bankruptcy Rule 4001(b) and Local Rule 4001-2, below is a concise statement of the relief requested with respect to the Debtor's proposed use of cash collateral:

| Summary of Material Terms of the Order | | Location |
|---|---|---|
| **Entities with Interest in Cash Collateral:**<br><br>Fed. R. Bankr. P. 4001(b)(1)(B)(i) | J.P. Morgan Chase Bank, NA | |
| **Amount of Cash Collateral Sought**<br><br>Local Rule 4001-2(a)(1)<br><br>Financing Guidelines § I(A)(2)(a) | In accordance with the Interim Budget, the Debtor seeks to use approximately $1.1 million during the period between the entry of the Interim Order and the entry of a Final Order, which the Debtor estimates will be approximately fourteen (14) days. | Order ¶ 3 |
| **Purposes for Use of Cash Collateral:**<br><br>Fed. R. Bankr. P. 4001(b)(1)(B)(ii) | The Debtor seeks to use the cash collateral in accordance with the Interim Budget to continue its business operations in the ordinary course. | Order ¶ 3 |
| **Termination Date:** | Unless there is a default in the Interim Order, | Order ¶ 2 |

6

| | | |
|---|---|---|
| Fed. R. Bankr. P. 4001(b)(1)(B)(iii) | the Debtor is authorized to use the Cash Collateral through July 23, 2014 or until such later time as the Bank consents or the Court may permit (the "**Interim Cash Collateral Period**"), subject to the terms and conditions set forth in the Interim Order. | |
| **Adequate Protection:**<br><br>Fed. R. Bankr. P. 4001(b)(1)(B)(iv) and (c)(1)(B)(ii)<br><br>Financing Guidelines § I(A)(2)(d) | The Replacement Liens (as defined below) shall serve as adequate protection pursuant to sections 361 and 363 of the Bankruptcy Code.<br><br>As further adequate protection for the Bank, commencing upon entry of the Interim Order and continuing thereafter on a monthly basis, the Debtor shall make monthly payments to the Bank in the amount of approximately $25,000.00, which shall be due and received by the Bank on or before the 19th business day of the respective month. A 5% late fee shall be payable for any such adequate protection payment that is received after its due date.<br><br>To the extent the Replacement Lien and other relief granted to the Bank in the Interim Order do not provide the Bank with adequate protection of its interest in the Cash Collateral, the Bank will have a super-priority administrative expense claim (the "**Super-Priority Claim**") under section 507(b) Bankruptcy Code. | Order ¶ 4<br><br><br><br>Order ¶ 7<br><br><br><br><br><br><br><br><br>Order ¶ 8 |
| **Carve-Out**<br><br>Financing Guidelines § I(A)(2)(d) | The Replacement Lien and the Super-Priority Claim shall be subordinate only to the fees and expenses of the Clerk of the Court and the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a) plus applicable interest on any such fees, and reasonable fees and expenses of a chapter 7 trustee up to an aggregate amount not to exceed $5,000 if the case is converted to one under chapter 7 of the Bankruptcy Code. | Order ¶ 9 |
| **Effect on Existing Liens** | No effect. | Order ¶ 4 |

7

| | | |
|---|---|---|
| Local Rule 4001-2(a)(4)<br><br>Financing Guidelines § I(A)(2)(d) | | |
| **Events of Default:**<br><br>Financing Guidelines § I(A)(2)(e) | (i) Entry of any order dismissing the within proceeding or converting the within proceeding to chapter 7 of the Bankruptcy Code;<br><br>(ii) Entry of an order authorizing the appointment of a chapter 11 trustee, or examiner with expanded powers;<br><br>(iii) Entry of an order modifying or vacating the automatic stay in favor of the Bank or any other party with respect to a substantial (determined by the Bank's reasonable discretion) portion of the Collateral;<br><br>(iv) The failure of the Debtor to make a required payment and the continued failure by the Debtor after five (5) days' notice to cure;<br><br>(v) The Debtor's failure to cure five (5) days' after notice of the default by the Debtor of any term or condition set forth in the Interim Order or any extension hereof, or the Loan Agreement; and<br><br>(vi) At 5:00 p.m. on July 23, 2014, unless further extended by written consent of the Bank or by order of this Court. | Order ¶ 17 |

## AUTHORITY TO USE CASH COLLATERAL ON AN INTERIM BASIS

14.    Bankruptcy Rule 4001(b)(2) provides that a final hearing on a motion for the authority to use cash collateral may not be commenced earlier than 14 days after the service of such motion. Upon request, however, a bankruptcy court is empowered to conduct a

8

preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

15. Pursuant to Bankruptcy Rule 4001(b)(2), the Debtor requests that this Court (a) conduct an interim hearing (the "**Interim Hearing**") to consider the entry of the Interim Order authorizing the Debtor to use approximately $1.1 million of cash collateral in accordance with the Interim Budget to avoid immediate and irreparable harm to its estate pending the Final Hearing and (b) on or about 14 days thereafter, schedule the Final Hearing to consider entry of the Final Order authorizing the Debtor to use cash collateral.

16. Such relief is necessary to maintain ongoing operations and avoid immediate and irreparable harm and prejudice to the Debtor's estate and all parties in interest in the Debtor's chapter 11 case.

## **ADEQUATE PROTECTION**

17. As adequate protection for the Debtor's use of Cash Collateral, the Bank will be granted a valid, perfected, and enforceable, post-petition lien on and security interest in all of the assets of the Debtor including, but not limited to, real property, rents, accounts, equipment, inventory, intellectual property, contracts, contract rights, and general intangibles, along with proceeds and products thereof (the "**Replacement Lien**"); provided, however, such post-petition lien shall not extend to the estate's avoidance claims under section 544, 547, 548, and 550 of the Bankruptcy Code. The Replacement Lien will be subject to all other validly and properly perfected pre-petition liens and security interests in favor of third parties that were senior to and had priority over the liens and security interests of the Bank as of the Petition Date.

18. Subject to the Carve Out (as defined below), the Replacement Lien will be deemed perfected to the same extent that the Bank's pre-petition liens and security interests were perfected immediately prior to the filing of the Debtor's chapter 11 petition, without the

9

necessity of filing any documents or otherwise complying with non-bankruptcy law in order to perfect security interests and record liens, with such perfection being binding upon all parties including, but not limited to, any subsequently appointed trustee either under chapter 11 or any other chapter of the Bankruptcy Code.

19. As further adequate protection for the Bank, commencing upon entry of the Interim Order and continuing thereafter on a monthly basis, the Debtor will make monthly payments to the Bank in the amount of $25,000.00, which shall be due and received by the Bank on or before the 19th business day of the respective month. A 5% late fee will be payable for any such adequate protection payment that is received after its due date.

20. To the extent the Replacement Lien and other relief granted to the Bank in the Interim Order do not provide the Bank with adequate protection of its interest in the Cash Collateral, the Bank will have a super-priority administrative expense claim (the "**Super-Priority Claim**") under section 507(b) Bankruptcy Code. The Super-Priority Claim of the Bank will have priority over all administrative expenses of any kind incurred in the Debtor's case, including such administrative expenses of the kinds specified in, or allowable under, sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b), or 726 of the Bankruptcy Code. Except with the consent of the Bank, no costs or expenses of administration that have been or may be incurred in these proceedings, any conversion of these proceedings pursuant to section 1112 of the Bankruptcy Code, or in any other proceeding related hereto, and no priority claims are, or will be, prior to or on a parity with the Super-Priority Claim of the Bank against the Debtor.

21. The Replacement Lien and the Super-Priority Claim will be subordinate only to the fees and expenses of the Clerk of the Court and the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a) plus applicable interest on any such fees, and reasonable fees and expenses of a chapter 7 trustee up to an aggregate amount not to exceed $5,000.00 if the

10

case is converted to one under chapter 7 of the Bankruptcy Code (the "**Carve-Out**").  None of the Carve Out may be used or incurred in connection with the assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief: (i) invalidating, setting aside, avoiding, subordinating, in whole or in part, the obligations, liens, and security interests in any of the collateral of the Bank or (ii) preventing, hindering, or delaying the Bank's assertion or enforcement of its liens or realization upon any collateral.

## CONCLUSION

22.     The Debtor requires the use of cash collateral to continue to manage its property and operate its business.  The continued use of the cash collateral will enable it to preserve and enhance the value of its assets and business for the benefit of all parties in interest.

23.     The Bank has reviewed this Motion and consented to the entry of the Interim Order in the form annexed hereto as Exhibit A.  The Final Order will provide the identical relief as the Interim Order, except that it will approve the use of the cash collateral on a final basis in accordance with a final budget.

## WAIVER OF MEMORANDUM OF LAW

24.     The Debtor respectfully requests that this Court waive the requirement that it file a memorandum of law in support of this Motion.  No memorandum of law is necessary because no novel issues of law are presented herein.

## NOTICE

25.     Following entry of the Interim Order, in accordance with Bankruptcy Rules 4001(b)(3) and 4001(c)(3), the Local Rules, and General Order M-274(I)(B), the Debtor will provide adequate notice of the Motion and the Final Hearing to: (a) counsel for the Bank, Platzer, Swergold, Levine, Goldberg, Katz & Jaslow, LLP, 475 Park Avenue South, New York,

NY 10022, Attn: Clifford A. Katz, Esq.; (b) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, New York, NY 10014, Attn: Richard Fox, Esq.; (c) the Debtor's 20 largest unsecured creditors; (d) any official committee of unsecured creditors appointed in this case; and (e) all persons who have filed a request for notice and service of papers in this case.

26. Such notice shall be given by mailing to such parties a copy of the Interim Order and the Motion.

27. The Debtor respectfully submits that, except as described above, no other or further notice need be provided.

28. No previous application for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests that this Court: (i) enter the Interim Order in the form annexed hereto as Exhibit A; (ii) schedule the Final Hearing; (iii) enter, after the Final Hearing, the Final Order; and (iv) grant it such other and further relief as to this Court deems just and proper.

Dated: New York, New York
July 7, 2014

ROSEN & ASSOCIATES, P.C.
Proposed Attorneys for the Debtor
 and Debtor in Possession

By: /s/ Nancy L. Kourland
Nancy L. Kourland

747 Third Avenue
New York, NY 10017-2803
(212) 223-1100