Hearing Date:
Time:

ROSEN & ASSOCIATES, P.C.
Attorneys for the Debtor
 and Debtor in Possession
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Nancy L. Kourland

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re                                                                    Chapter 11

  PRETTY GIRL, INC.,                                          Case No. 14-11979 (SHL)

                         Debtor.
------------------------------------------------------------x

**DEBTOR'S MOTION, PURSUANT TO SECTION 1112(a) OF THE
BANKRUPTCY CODE, FOR AN ORDER CONVERTING ITS CHAPTER
11 CASE TO ONE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE**

TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:

Pretty Girl, Inc., the above-captioned debtor and debtor in possession (the

"**Debtor**"), by its attorneys, Rosen & Associates, P.C., as and for its motion (the "**Motion**") for

an order, pursuant to section 1112(a) of the Bankruptcy Code, converting its chapter 11 case to

one under chapter 7 of the Bankruptcy Code, respectfully represents:

**JURISDICTION**

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334.  Consideration of this Motion is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2).  Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408

and 1409.

## BACKGROUND

2. On July 2, 2014 (the "**Petition Date**"), the Debtor commenced in this Court a voluntary case under chapter 11 of the Bankruptcy Code.

3. Since the Petition Date, the Debtor has continued to operate its business and manage its property as a debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On July 15, 2014, the United States Trustee for Region 2 appointed an official committee of unsecured creditors (the "**Committee**").

5. To date, no trustee or examiner has been appointed in the Debtor's case.

6. The Debtor is a corporation organized under the laws of the state of New York. The Debtor, which was founded in 1985, purchases inventory from third party vendors and non-debtor affiliates and sells such inventory to twenty-five (25) individually incorporated and operated retail stores (the "**Stores**") located in New York and New Jersey that sell fashionable junior, missy, and plus-size clothing, accessories, and footwear to price-conscious women. Albert Nigri is the sole shareholder of both the Debtor and each of the Stores.

7. The Debtor commenced its chapter 11 case to afford it a centralized forum for the restructuring of its various obligations. Its business had suffered as a result of the weak economic recovery from the recession, which has particularly affected the buying habits of the Stores' cost-conscious customers. As of June 30, 2014, the Debtor had generated a loss from operations of approximately $4.33 million.

8. As of June 30, 2014, the Debtor's unsecured trade debt aggregated approximately $4.22 million. In addition, a judgment was entered against the Debtor on June 13, 2014 by the United States District Court for the Eastern District of New York in the amount of

$3,365,000.00. The judgment arose from an action by an employee of one of the Stores who sought damages based upon claims of a "hostile work environment," assault and battery, and negligence.

9. The Debtor's secured creditor, JPMorgan Chase Bank N.A. ("**Chase**"), is owed approximately $2.75 million under a term loan and revolving line of credit in the original aggregate amount of $3.0 million. Its obligations to Chase are secured by all of its property, including inventory, chattel paper, accounts receivable, general intangibles, and proceeds or products thereof. On December 4, 2014, the Debtor had approximately $3.6 million in accounts receivable due from the Stores and approximately $33,000 in inventory at book value.

10. The Debtor's obligations to Chase also are individually guaranteed by each of the Stores, PGNY, Inc., a non-debtor affiliate wholly owned by Mr. Nigri, and Mr. Nigri personally. The obligation of each of the Stores to Chase is secured by a security interest in all of its inventory and the proceeds thereof. The aggregate book value of the Stores' inventory is approximately $2.2 million.

11. In addition to professional fees, the Debtor owes approximately $1.7 million in section 503(b)(9) administrative expense claims for goods received in the twenty day period prior to the Petition Date.

**RELIEF REQUESTED**

12. By this Motion, the Debtor, respectfully requests the entry of an order, pursuant to section 1112(a) of the Bankruptcy Code, converting its chapter 11 case to one under chapter 7 of the Bankruptcy Code. The Debtor also is seeking to schedule the hearing on this Motion on shortened notice in accordance with Rule 9006 of the Federal Rules of Bankruptcy Procedure.

3

13. On October 2, 2014, this Court entered the Final Order Authorizing Use of Cash Collateral and Granting Adequate Protection [Document No. 83]. For the month ending October 31, 2014, the Debtor did not meet it projections. It projected collections of $1.272 million from the Stores on account of inventory purchases. It actually collected approximately $700,000. The Debtor anticipates a similar negative variance for the month of November.

14. The Debtors' projections of revenue, which is a function of the Stores' sales, were overly optimistic. In fact, the Stores' performance is consistent with their historical results. The Stores' general ledgers demonstrate that historically, their sales decline in the beginning in October and do not improve until April. Consequently, the Stores lose money during this period and are unable to pay the Debtor within invoiced terms of 60 days of sales. This revenue cycle is contrary to that customarily experienced by the retail industry, which experiences a spike in revenue and earns most of its annual profit during the holiday season.

15. As of October 31, 2014, the Debtor had a net operating profit of approximately $114,000 before reorganization expenses which consist of professional fees in the amount of approximately $325,000 and U.S. Trustee fees in the amount of $6,500.00. This level of profit is insufficient to sustain the Debtor during the slower months of its revenue cycle. Consequently, the Debtor determined that it would not be able to satisfy the feasibility requirement of section 1129 of the Bankruptcy Code with respect to any plan of reorganization under which it remains in business.

16. On November 13, 2014, at a meeting at the offices of counsel to the Committee, the Debtor and its professionals expressed to the Committee's professionals its belief that it was unlikely that it could confirm a plan of reorganization due to reduced sales at the Stores and exponential administrative expenses. Rather, the Debtor proposed a plan of

liquidation in light of the Stores' intention to close over a 6 month period. To the extent that funds collected by the Debtor on its accounts receivable exceeded amounts due to Chase, those funds would be available under such plan to pay a portion of the administrative claims.

17.     The Committee did not respond to the Debtor's proposal. Rather, on the eve of the December 2, 2014 status conference before this Court, its counsel filed a letter on this Court's docket in which it stated that it had lost faith in the Debtor's management and intended to seek the appointment of a chapter 11 operating trustee. The Committee alleged, without any evidentiary support, that Mr. Nigri had instructed the Stores not to pay amounts owed to the Debtor and that this instruction is the cause of the Debtor's deteriorating financial position.

18.     Contrary to these assertions, the Stores have not withheld and are not withholding cash that can otherwise be expended in payment of amounts due the Debtor for inventory purchases. Despite the Committee's innuendo, Mr. Nigri is not operating the Stores at the expense of the Debtor or in any manner that is adverse to the interests of the Debtor.[1] All cash maintained at the Store level is earmarked for the payment of the Stores' direct expenses of rent, payroll, and utilities, all of which must be paid in order for the Stores to continue to operate, sell inventory, and thereby pay any amounts due to the Debtor.

19.     Since its meeting with the Committee, the Debtor has determined that confirmation of a plan of liquidation is not possible because the selling prices of the inventory to be sold by the Stores in a liquidation and closing of the Stores will not generate sufficient revenue to enable the Debtor, through the collection of amounts due from the Stores, to pay Chase in full, pay the professional fees, which would continue to accrue, and the section 503(b)(9) claims.

---

[1] Mr. Nigri has every incentive to cause the Stores to pay the Debtor for their inventory purchases because, as mentioned above, he has personally guaranteed the Debtor's obligations to Chase.

20. Therefore, the Debtor has determined, in its business judgment, that it is in the best interests of its estate and its creditors to convert its chapter 11 case to one under chapter 7 of the Bankruptcy Code.

21. A chapter 7 trustee will be able to efficiently and effectively liquidate the Debtor's remaining inventory, collect its receivables from the Stores, and investigate and pursue any chapter 5 claims.

## LEGAL ARGUMENT

22. Section 1112(a) of the Bankruptcy Code governs the voluntary conversion of a case from chapter 11 to chapter 7, and provides that that a debtor may convert a chapter 11 case to a chapter 7 case at any time as a matter of right. *See* 11 U.S.C. § 1112(a). Specifically, section 1112(a) provides that a debtor may convert a chapter 11 case to chapter 7 unless: (a) a debtor is not a debtor in possession; (b) the case originally was commenced as an involuntary chapter 11 case; or (c) the case was converted to a chapter 11 case other than on the debtor's request. *Id.*

23. Accordingly, section 1112(a) of the Bankruptcy Code gives a chapter 11 debtor the absolute right to convert to chapter 7 unless one of the enumerated exceptions in section 1112(a) of the Bankruptcy Code applies. *See, e.g., In re Dieckhaus Stationers of King of Prussia, Inc.*, 73 B.R. 969, 971 (Bankr. E.D. Pa. 1987) (stating that section 1112(a) "gives a debtor in possession an absolute right to convert, unless the case is governed by one of the enumerated exceptions"); *Abbott v. Blackwelder Furniture Co.*, 33 B.R. 399, 401 (W.D.N.C. 1983) ("Congress provided the Chapter 11 debtor with the absolute right to accomplish voluntary conversion to a Chapter 7 liquidation without Court approval."); *see also* Fed. R. Bankr. P.

6

1017(f)(1) and 1017(f)(2) (conversion under section 1112(a) is requested by motion under Rule 9013, but is not to be treated as a contested matter under Rule 9014).

24. In this chapter 11 case, none of the enumerated exceptions of section 1112(a) of the Bankruptcy Code apply. Specifically, (a) the Debtor is a debtor in possession under sections 1107 and 1108 of the Bankruptcy Code, (b) this case was commenced by the filing of a voluntary chapter 11 petition, and (c) this case was not converted previously to chapter 11 from another chapter of the Bankruptcy Code. Thus, the Debtor is entitled, as a matter of right, to convert its chapter 11 case to a case under chapter 7.

## NOTICE

25. Notice of this Motion will been given to: (a) the Office of the United States Trustee for Region 2; (b) counsel to the Committee; (c) the Debtor's scheduled creditors; and (d) all creditors who have filed a proof of claim.

## NO PRIOR REQUEST

26. No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, the Debtor respectfully requests that this Court: (i) enter an order granting the relief sought herein; and (ii) grant such other and further relief to the Debtor as this Court may deem proper.

Dated: New York, New York
       December 11, 2014

                                        ROSEN & ASSOCIATES, P.C.
                                        Attorneys for the Debtor
                                         and Debtor in Possession


                                        By: /s/ Nancy L. Kourland
                                            Nancy L. Kourland

7

747 Third Avenue
New York, NY 10017-2803
(212) 223-1100